# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

VERONICA DODGE,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**Case No.**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
WHITE COUNTY,⠀⠀⠀⠀)
TENNESSEE,⠀⠀⠀⠀⠀⠀)⠀⠀⠀**JURY DEMAND**
and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STEVE PAGE, SHERIFF,⠀⠀⠀)
in his individual and official capacities,⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀)

## COMPLAINT

Plaintiff Veronica Dodge ("Plaintiff" or "Ms. Dodge"), by and through counsel, for her Complaint against Defendant White County, Tennessee ("Defendant" or "White County"), and Steve Page ("Sheriff" or "Page") states as follows:

## I.⠀⠀INTRODUCTION

1.⠀⠀This is an action for unlawful disability discrimination, failure to accommodate, sex discrimination, retaliation, and constructive discharge arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* as amended by the ADA Amendments Act of 2008 ("ADA") and the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103.

2.⠀⠀During her employment with the White County Sheriff's Office, Plaintiff successfully performed her duties as a certified deputy sheriff and warrant deputy.

3.⠀⠀Following knee surgery in April 2024, Plaintiff returned to work with temporary medical restrictions.

4.⠀⠀Plaintiff repeatedly requested reasonable accommodations that would allow her to continue

working.

5.     Plaintiff had previously performed accommodated duties in the warrants and court division, including NCIC work, paperwork, reports, court-related functions, walk-ins, and related administrative duties.

6.     Defendant nevertheless removed Plaintiff from work, imposed a de facto "100% healed" or unrestricted-duty requirement, and refused to allow Plaintiff to continue performing available duties within her medical restrictions.

7.     Male deputies with medical restrictions were treated more favorably and were permitted to continue working with accommodations, light duty assignments, modified duties, desk assignments, or reassigned responsibilities.

8.     Defendant's refusal to accommodate Plaintiff and differential treatment based upon her sex and disability ultimately forced Plaintiff from employment.

9.     Following Plaintiff's separation from employment, Defendant further retaliated against Plaintiff by initiating POST decertification proceedings against her.

10.     The Tennessee POST Commission ultimately took no action against Plaintiff's certification.

## II: JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) because this action arises under the laws of the United States.

12.     This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in White County, Tennessee, which is within this judicial district.

14. Plaintiff complied with all conditions precedent to filing this action by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission and commencing this action within ninety (90) days of receipt of the Notice of Right to Sue.

### III: PARTIES

15. Plaintiff Veronica Dodge is an adult resident citizen of White County, Tennessee and was at all relevant times a qualified individual within the meaning of the ADA.

16. At all times relevant herein, Plaintiff was employed by the White County Sheriff's Office as a certified law enforcement officer.

17. Defendant White County, Tennessee is a political subdivision organized under the laws of the State of Tennessee and at all material times Defendant has been an employer defined by the ADA, 42 U.S.C. § 12111.

18. Defendant Steve Page is an adult resident citizen of Tennessee and may be served with process according to law. At all relevant times, Page was elected to serve as Sheriff for the White County Sheriff's Office. He has been sued in his individual and official capacities.

19. At all times relevant herein, White County acted through Sheriff Steve Page, Major Richard Lynch, command staff, supervisors, managers, and agents.

20. At all relevant times, Defendant employed sufficient employees to constitute an employer within the meaning of Title VII and the ADA.

21. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

22. Plaintiff's EEOC Charge alleged disability discrimination, sex discrimination, and retaliation.

23. The EEOC issued Plaintiff a Notice of Right to Sue dated March 27, 2026.

24. Plaintiff has filed this action within ninety (90) days of receipt of the Notice of Right to Sue. See Exhibit A.

25. Plaintiff has exhausted all administrative prerequisites to filing this action.

26. Plaintiff began employment with Defendant on or about April 27, 2022.

27. Plaintiff initially worked as a correctional officer.

28. Plaintiff later became a certified deputy sheriff.

29. Plaintiff subsequently worked as an FTO deputy and later as a warrant deputy.

30. Prior to the events giving rise to this action, Plaintiff successfully performed her duties and remained employed in good standing.

31. Plaintiff consistently performed her duties in a competent and satisfactory manner and remained capable of performing the essential functions of available assignments with reasonable accommodation.

32. Prior to her medical leave, Plaintiff worked in the warrants division.

33. Plaintiff's duties in the warrants and court division included entering criminal and civil paperwork, NCIC work, criminal history work, taking reports from walk-ins, assisting with courtroom security and paperwork, and related administrative functions.

34. Plaintiff successfully performed the essential functions of available assignments with reasonable accommodation.

35. In or around April 2024, Plaintiff underwent knee surgery.

36. Defendant was aware of Plaintiff's surgery and medical condition.

37. Plaintiff utilized FMLA leave related to her surgery and recovery.

38. Plaintiff was at all relevant times a qualified individual within the meaning of the Americans with Disabilities Act because she remained capable of performing the essential

functions of numerous available law-enforcement and administrative assignments with reasonable accommodation.

39. Plaintiff's medical providers later released Plaintiff to return to work with temporary restrictions.

40. Plaintiff's restrictions included limitations on running, cutting, pivoting, sudden movements, and physical altercations.

41. Plaintiff's knee condition and resulting impairments substantially limited one or more major life activities, including walking, standing, running, bending, lifting, and performing other physical activities.

42. Plaintiff's restrictions were temporary and subject to reevaluation.

43. Defendant knew of Plaintiff's actual disability, record of impairment, and/or regarded Plaintiff as having an impairment within the meaning of the ADA.

44. Plaintiff's providers repeatedly authorized Plaintiff to perform desk work, light field work, community events, and related law enforcement duties.

45. Plaintiff's providers anticipated full medical clearance within a finite recovery period.

46. Plaintiff remained willing and able to perform numerous law enforcement and administrative functions throughout her recovery.

47. Following her surgery, Plaintiff continued performing accommodated duties.

48. Plaintiff successfully performed accommodated assignments for extended periods without operational incident, performance deficiency, or demonstrated inability to perform assigned duties.

49. Plaintiff worked in the warrants and court division while under medical restrictions.

50. Plaintiff performed paperwork, NCIC functions, reports, walk-ins, court-related duties,

and other tasks within her restrictions.

51. Defendant was aware Plaintiff successfully performed these duties.

52. Defendant also knew Plaintiff could continue performing numerous law enforcement functions despite temporary restrictions.

53. Plaintiff repeatedly expressed willingness to continue working.

54. Plaintiff repeatedly informed Defendant she could perform desk duties, court duties, civil process duties, report writing, traffic control, accident scenes, walk-ins, and other modified functions.

55. Plaintiff repeatedly sought reasonable accommodation that would permit her to continue working.

56. Prior to surgery, Plaintiff requested accommodation from Sergeant Sheila Hillis.

57. Sergeant Hillis advised Plaintiff that her surgery would not prevent her from performing her primary NCIC, paperwork, warrant, and administrative duties.

58. Plaintiff subsequently returned to work and successfully performed those duties while recovering from surgery.

59. Defendant permitted Plaintiff to perform accommodated duties for months without incident.

60. Defendant had available accommodated work and modified-duty assignments.

61. Male deputies employed by Defendant were treated more favorably than Plaintiff.

62. Male deputies were permitted to continue working with restrictions, light duty assignments, desk assignments, modified duties, or accommodations.

63. Defendant permitted male deputies including Aaron Light, Nathaniel Lombard, and Michael Weedman to continue employment through accommodations, modified assignments,

administrative leave, reassignment, desk-duty assignments, light-duty assignments, sick leave benefits, and/or other employment-retention measures despite injuries, restrictions, disciplinary issues, or other limitations.

64. Defendant maintained discretion regarding reassignment, modified duty, light duty, and operational accommodations.

65. On or about April 18, 2024, Major Richard Lynch stated in the presence of other employees, "Are there any females here?" After observing Plaintiff, Lynch responded, "You weren't supposed to be here."

66. Defendant exercised flexibility and discretion for male employees while refusing similar flexibility, accommodations, reassignment options, or modified-duty opportunities for Plaintiff.

67. Defendant exercised discretion and flexibility in disciplinary, reassignment, leave, and employment-retention decisions involving male deputies and supervisors accused of serious policy violations and investigative failures.

68. Defendant accommodated male deputies including Aaron Light, Nathaniel Lombard, and Michael Weedman following injuries, medical restrictions, disciplinary matters, administrative leave, reassignment, and/or modified duty situations, the precise nature and extent of which are uniquely within Defendant's possession.

69. Supervisory personnel and command staff made comments reflecting hostility toward female deputies, skepticism regarding women working patrol assignments, and discriminatory attitudes regarding Plaintiff's role as a female law enforcement officer.

70. On or about April 22, 2024, during an internal affairs interview, Lynch told Plaintiff, "This is not La Vergne," referencing a widely publicized scandal involving female law enforcement officers.

71. Similarly situated male deputies were not subjected to comparable gender-based comments or references.

72. Following discipline arising from the April 13, 2024, incident, Plaintiff's firearm, badge, identification, and vehicle were removed.

73. A male deputy disciplined for the same incident did not have his firearm, badge, identification, or vehicle removed.

74. Supervisory personnel further made comments minimizing Plaintiff's medical restrictions and concerns regarding physical altercations, including statements suggesting Plaintiff needed a "good wooling," physical altercation, or fight to overcome concerns about returning to patrol duties while recovering from knee surgery.

75. At the time such comments were made, Defendant was aware Plaintiff remained under medical restrictions prohibiting physical altercations, running, pivoting, and similar activities.

76. The foregoing comments reflected discriminatory attitudes toward Plaintiff based upon sex, hostility toward Plaintiff's accommodation requests, and disregard for Plaintiff's medical restrictions.

77. Plaintiff was treated less favorably because of her sex and disability.

78. In or around August 2024, Defendant reassigned Plaintiff from warrants-related duties to patrol.

79. Defendant reassigned Plaintiff despite knowledge of her temporary restrictions.

80. Plaintiff informed supervisors about her medical limitations.

81. Plaintiff was initially informed accommodations could be made.

82. Defendant nevertheless removed Plaintiff from accommodated duties.

83. On or about July 23, 2024, supervisory personnel and command staff discussed staffing

shortages and patrol coverage issues affecting Plaintiff's assignment status.

84. Defendant reassigned Plaintiff to patrol duties because of staffing concerns and operational preferences.

85. Defendant, through supervisory personnel and command staff, had actual knowledge of Plaintiff's medical restrictions and ongoing recovery.

86. Despite Plaintiff's ongoing restrictions, Defendant reassigned Plaintiff from accommodated duties in the warrants division to patrol-related duties because of operational staffing concerns rather than any inability by Plaintiff to perform available accommodated work.

87. Defendant maintained another deputy in the warrants division who was not medically restricted.

88. Defendant nevertheless removed Plaintiff from accommodated work rather than reassigning the unrestricted deputy.

89. Plaintiff attempted to continue working within her restrictions.

90. Plaintiff repeatedly communicated with command staff regarding available accommodations.

91. Plaintiff repeatedly requested permission to continue working in some capacity.

92. Plaintiff advised Defendant she remained capable of numerous duties within the Sheriff's Office.

93. On August 5, 2024, Plaintiff obtained an updated medical note clarifying her restrictions and provided it to Defendant.

94. Plaintiff was advised the restrictions were acceptable and worked a full patrol shift.

95. The following day, August 6, 2024, Defendant removed Plaintiff from duty despite no material change in Plaintiff's medical condition.

96. Defendant advised Plaintiff in writing that she was relieved of duty until she was fully released to work without restrictions.

97. Defendant further advised Plaintiff that she would not be permitted to return until she obtained a full unrestricted release.

98. Defendant advised Plaintiff that she could not return until fully released without restrictions.

99. Sheriff Steve Page was copied on the written communication.

100. Plaintiff also directly communicated with Sheriff Page regarding her request to return to work and her request for accommodation.

101. Defendant effectively imposed a de facto '100% healed' or fully unrestricted-duty return-to-work requirement despite Plaintiff's ability to perform numerous available duties within her restrictions.

102. Defendant's insistence upon unrestricted release occurred despite Plaintiff's demonstrated ability to successfully perform accommodated duties for extended periods of time.

103. Defendant failed to conduct a reasonable individualized assessment of Plaintiff's actual capabilities.

104. Defendant failed to reasonably accommodate Plaintiff.

105. Defendant failed to adequately engage in the ADA interactive process.

106. Defendant rejected available accommodations and modified-duty alternatives.

107. Defendant's refusal to accommodate Plaintiff was inconsistent with its treatment of male deputies.

108. Defendant's prior accommodations during Plaintiff's earlier knee-surgery recovery demonstrated Defendant's ability to permit Plaintiff to continue working within medical

restrictions when operationally convenient.

109.    Plaintiff repeatedly communicated with command staff seeking accommodation and return to work.

110.    In written communications dated August 28, 2024, Defendant acknowledged Plaintiff could perform desk work, light field work, and community-event duties but nevertheless refused to return Plaintiff to work because of speculative concerns that an altercation or unforeseen event might occur.

111.    Plaintiff thereafter requested reconsideration and permission to return to work under the same restrictions that had previously allowed her to successfully perform her duties.

112.    Plaintiff advised Defendant that she remained capable of court duties, paperwork, NCIC work, civil process duties, accident scenes, school traffic, walk-ins, and related functions.

113.    Plaintiff repeatedly expressed willingness to work within restrictions.

114.    Defendant never offered Plaintiff any alternative assignment, reassignment, temporary placement, or modified-duty position despite Plaintiff's repeated requests to continue working.

115.    Defendant had previously accommodated Plaintiff during an earlier knee-surgery recovery period by permitting Plaintiff to continue working in the warrants division while under significant physical restrictions.

116.    Defendant's stated reasons for removing Plaintiff from work and refusing accommodation were false, selectively enforced, exaggerated, inconsistent with Defendant's treatment of male employees, and pretextual.

117.    Plaintiff repeatedly informed Defendant that she wished to remain employed by the White County Sheriff's Office.

118.    Plaintiff repeatedly requested reasonable accommodation and repeatedly sought

permission to return to work within her medical restrictions.

119. Plaintiff informed Defendant that unpaid leave created severe financial hardship for her family.

120. Plaintiff advised Defendant that she was struggling financially due to the removal from work.

121. Plaintiff repeatedly requested reconsideration of Defendant's decision to remove her from duty and place her on unpaid leave.

122. Plaintiff advised Defendant that she remained capable of performing court duties, paperwork, NCIC functions, civil process duties, walk-in complaints, report writing, traffic control, accident scenes, school traffic assignments, community events, and other available duties within her restrictions.

123. Defendant nevertheless continued insisting Plaintiff remain off work until unrestricted release.

124. Defendant refused to permit Plaintiff to continue accommodated duties.

125. Defendant's refusal to accommodate Plaintiff and imposition of unpaid leave made continued employment untenable.

126. Plaintiff was effectively forced from employment.

127. Plaintiff ultimately resigned after Defendant refused to permit her to continue working with accommodations.

128. Plaintiff's resignation was the foreseeable result of Defendant's actions.

129. Plaintiff exhausted available leave benefits and income sources while Defendant continued refusing to permit her return to available accommodated work.

130. Despite Plaintiff's repeated requests for accommodation, return to work, and

reconsideration, Defendant continued insisting that Plaintiff remain off work until she obtained a full unrestricted release.

131. Defendant refused to permit Plaintiff to continue performing accommodated duties that she had previously performed successfully and that Defendant knew she remained capable of performing.

132. Defendant's refusal to accommodate Plaintiff and insistence upon an unrestricted-duty requirement made continued employment objectively intolerable and left Plaintiff with no reasonable alternative but to seek other employment.

133. Plaintiff's resignation was the foreseeable and direct result of Defendant's actions and constituted a constructive discharge.

134. Plaintiff engaged in protected activity by repeatedly requesting reasonable accommodations, challenging Defendant's refusal to accommodate her disability, requesting reconsideration of Defendant's decisions, complaining that she was being treated differently than male deputies and opposing discriminatory treatment based upon sex, and asserting rights protected by federal law.

135. Defendant's actions also caused Plaintiff financial hardship related to law-enforcement training expenses, interruption of employment, and disruption of Plaintiff's anticipated career progression within law enforcement.

136. Sheriff Page and/or White County thereafter initiated or pursued POST decertification proceedings against Plaintiff.

137. Sheriff Page, command staff, and/or Defendant White County escalated disciplinary and certification-related actions after Plaintiff sought accommodation and opposed discrimination.

138. Defendant's POST-related actions damaged Plaintiff professionally and economically.

139.   Plaintiff suffered stress, reputational harm, career disruption, and economic damages as a result of Defendant's actions.

140.   The Tennessee POST Commission ultimately took no action against Plaintiff's certification.

141.   Defendant's actions were retaliatory.

142.   Defendant's conduct was intentional, willful, malicious, reckless, and/or carried out with deliberate indifference to Plaintiff's federally protected rights.

## COUNT 1: ADA DISABILITY DISCRIMINATION AND REGARDED-AS DISCRIMINATION
### 42 U.S.C. § 12112(a)

143.   Plaintiff incorporates by reference the preceding paragraphs.

144.   Plaintiff had an actual disability, a record of impairment, and/or was regarded as disabled within the meaning of the ADA.

145.   Plaintiff was qualified to perform the essential functions of her position.

146.   Plaintiff remained capable of performing numerous law enforcement and administrative duties.

147.   Defendant knew of Plaintiff's disability and restrictions.

148.   Defendant discriminated against Plaintiff because of disability.

149.   Defendant treated Plaintiff less favorably than employees who were not disabled and/or not perceived as disabled.

150.   Defendant removed Plaintiff from work because of her disability and restrictions.

151.   Defendant's actions violated the ADA.

152.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT II: ADA FAILURE TO ACCOMMODATE
### 42 U.S.C. § 12112(b)(5)(A)

153. Plaintiff incorporates by reference the preceding paragraphs.

154. Plaintiff requested reasonable accommodations.

155. Reasonable accommodations were available.

156. Plaintiff successfully performed accommodated duties for a period of time.

157. Defendant had available modified-duty, desk-duty, court-duty, and/or administrative assignments.

158. Defendant failed and refused to reasonably accommodate Plaintiff.

159. Defendant failed to meaningfully engage in the interactive process.

160. Defendant imposed a de facto unrestricted-duty or "100% healed" requirement.

161. Defendant's conduct violated the ADA.

162. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT III: ADA RETALIATION
### 42 U.S.C. § 12203

163. Plaintiff incorporates by reference the preceding paragraphs.

164. Plaintiff engaged in protected activity under the ADA.

165. Defendant knew Plaintiff engaged in protected activity.

166. Defendant thereafter subjected Plaintiff to adverse actions.

167. Defendant removed Plaintiff from work, denied accommodations, forced unpaid leave, constructively discharged Plaintiff, and pursued POST-related actions against Plaintiff.

168. Defendant's actions were causally connected to Plaintiff's protected activity.

169. Defendant's conduct violated the ADA.

170. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT IV: TITLE VII SEX DISCRIMINATION
### 42 U.S.C. § 2000e-2(a)

171. Plaintiff incorporates by reference the preceding paragraphs.

172. Plaintiff is female.

173. Defendant treated similarly situated male employees more favorably.

174. Male employees received accommodations, modified assignments, reassignment flexibility, desk assignments, light duty, and/or other favorable treatment.

175. Plaintiff was denied similar treatment.

176. Defendant subjected Plaintiff to adverse employment actions because of sex.

177. Defendant's conduct violated Title VII.

178. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT V: TITLE VII RETALIATION
### 42 U.S.C. § 2000e-3(a)

179. Plaintiff incorporates by reference the preceding paragraphs.

180. Plaintiff engaged in protected activity under Title VII.

181. Defendant knew Plaintiff engaged in protected activity.

182. Defendant thereafter subjected Plaintiff to adverse employment actions.

183. Defendant's actions were motivated by retaliatory intent.

184. Defendant's conduct violated Title VII.

185. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT VI: TENNESSEE DISABILITY ACT
### Tenn. Code Ann. § 8-50-103

186. Plaintiff incorporates by reference the preceding paragraphs.

187. Plaintiff was disabled and/or regarded as disabled within the meaning of Tennessee law.

188. Defendant discriminated against Plaintiff because of disability.

189. Defendant discriminated against Plaintiff because of disability in violation of Tennessee

law.

190. Defendant's conduct violated the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103.

191. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

192. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages including:

  a. Lost wages and benefits;

  b. Loss of earning capacity;

  c. Emotional distress;

  d. Mental anguish;

  e. Humiliation and embarrassment;

  f. Loss of professional opportunities and future law-enforcement opportunities;

  g. Reputational harm;

  h. Future economic losses and diminished future employment opportunities;

  i. Costs and attorney's fees;

  j. Other compensatory damages permitted by law.

193. Defendant acted intentionally and/or with reckless indifference to Plaintiff's federally protected rights.

194. Plaintiff demands a trial by jury on all issues so triable.

  **WHEREFORE**, Plaintiff respectfully requests judgment against Defendants and requests the following relief:

  (a)  Enter judgment in favor of Plaintiff and against Defendant;

  (b)  Award compensatory damages;

  (c)  Award back pay, front pay, lost benefits, and other economic damages;

**(d)** Award reinstatement or, alternatively, front pay and future economic damages;

**(e)** Award damages for emotional distress and mental anguish;

**(f)** Award pre-judgment and post-judgment interest;

**(g)** Award attorney's fees and costs pursuant to applicable law;

**(h)** Award all equitable relief available under federal and Tennessee law;

**(i)** She be awarded a trial by jury; and

**(j)** That Plaintiff be granted such other further general and/or special, legal and/or equitable relief to which she may be entitled, or the Court deems just and proper.

Respectfully submitted,
DANA LOOPER LAW, PLLC

BY:/s/ Dana R. Looper
Dana R. Looper, Esq. (#036859)
472 E. Spring Street
Cookeville, TN 38501
P: (931) 559-3529
F: (931) 559-3540
Email: danalooper@danalooperlaw.com

*Counsel for the Plaintiff*

**VERIFICATION**

I, VERONICA DODGE, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action; that I have read the foregoing Complaint and know the contents thereof; that the factual allegations contained therein are true and correct based upon my personal knowledge, except as to matters alleged upon information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 16th_ , 2026.

_____
VERONICA DODGE



U.S. Department of Justice
**Civil Rights Division**

civilrights.justice.gov

747736-CZD

**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**

Mar 27, 2026

Veronica Dodge

dodge.ved@gmail.com

Re:     Veronica Dodge v. WHITE COUNTY SHERIFFS DEPARTMENT, et al., .
EEOC Charge No. 494-2025-01091

Dear Veronica Dodge,

You are receiving this notice because you filed the above charge(s) with the Equal Employment Opportunity Commission (EEOC), and you or your attorney specifically requested this notice.

Because either 180 days have passed since you filed the above charge(s), or because the EEOC has determined that it will not be able to conclude its administrative process within 180 days of the date it assumed jurisdiction of the charge(s), you are hereby notified that you have the right to file a lawsuit commencing a civil action based on the charge(s) under the following statute(s):

- Title VII of the Civil Rights Act of 1964, 42 USC. 42 U.S.C. § 2000e, et seq.

- Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq.

If you decide to file a lawsuit under the statute(s) identified above, **you must file it in the appropriate court within 90 days of receiving this Notice**. This Notice

- Title VII of the Civil Rights Act of 1964, 42 USC. 42 U.S.C. § 2000e, et seq.

- Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq.

If you decide to file a lawsuit under the statute(s) identified above, **you must file it in the appropriate court within 90 days of receiving this Notice**. This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether your charge is meritorious. If you haven't already, you may want to consult with a private attorney of your own choosing and expense.

If you have questions or wish to inspect the investigative file pertaining to this matter, please address your inquiry to the following EEOC office: Little Rock Area Office. Contact information for this office can be located at https://www.eeoc.gov/field-office/littlerock/location.

Sincerely,

Complaint Referral Unit
Employment Litigation Section
Civil Rights Division

CC: dodge.ved@gmail.com, danalooper@danalooperlaw.com, mschmitt@ortalekelley.com, Rita.barnes@eeoc.gov

## Contact

civilrights.justice.gov

 U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

 (202) 514-3847
1-855-856-1247 (toll-free)
Telephone Device for the Deaf
(TTY) (202) 514-0716